UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAN LIGAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:06-CV-798 (CEJ) |
| | ) |
| IPD SALES & MARKETING, L.L.C., | ) |
| d/b/a/ ASATI WORLDWIDE, and | ) |
| OOO AIR STRUCTURES AMERICAN | ) |
| TECHNOLOGIES AND INVESTMENT, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

On July 3, 2007, the Court entered an order striking the defendants' answer and pleadings and providing that default judgment would be entered in favor of plaintiff as a result of the defendants' bad faith refusal to provide discovery. This matter is now before the Court following a hearing on August 2, 2007, to determine the amount of the judgment to be entered in favor of the plaintiff.

**I.   Background**

Between 2000 and 2005, plaintiff Jan Ligas and defendants were business associates engaged in the manufacture and sale of air-supported structures to be used as recreational facilities, warehouses, and for other activities. On July 14, 2005, the parties entered into a "Mutual Release and Payment" which provided that plaintiff was to receive a two percent commission on gross sales of air-supported structures as defined in the agreement. The Mutual Release defines gross sales as "the purchase price for air

supported structure projects, denominated in US (United States of America) Dollars, actually paid to IPD [defendant IPD Sales & Marketing, LLC] or any of its affiliates, for the aforesaid air structures that are the subject of a May 3, 2005 Agreement and May 17, 2005 Amendment . . . and all other Products and projects which are now, or may be in the future, the subject of the aforesaid Agreement and Amendment." The Mutual Release also provides that if IPD had not paid Ligas $190,000 during the contract period, then that amount would become due upon the termination of the contract. Id.

At the August 2, 2007 hearing, plaintiff Ligas testified about the sales of air-supported structures that he knows or believes were made pursuant to the Mutual Release and the two May 2005 agreements referenced therein. Plaintiff testified that he believes the total amount of commissions to which he is entitled is $895,000. He seeks to recover that amount, plus interest and costs of suit.

**II. Discussion**

Plaintiff alleges in the complaint that defendants are obligated to pay him commissions pursuant to the Mutual Release and Payment agreement, but that defendants have refused to pay, thus breaching the agreement. Because the defendants' answer and pleadings have been stricken, the allegations of the complaint are unopposed and are deemed to be true. See Angelo Iafrate Const., L.L.C. v. Potashnick Const., Inc., 370 F.3d 715, 722 (8th Cir. 2004); Fed.R.Civ.P. 55(b)(2). The Court thus finds that defendants

IPD Sales & Marketing, LLC, d/b/a/ ASATI Worldwide, and OOO Air Structures American Technologies and Investment have breached the Mutual Release and Payment agreement, and the plaintiff is entitled to recover damages.

    **A.**    <u>**Date of Breach**</u>

Missouri law applies in this diversity action. In a breach of contract case, "the goal in awarding damages is to put the non-breaching party in as good a position as he or she would have been in if the contract had been performed." <u>Pepsi Midamerica v. Harris</u>, ---- S.W.3d----, 2007 WL 2531037 (Mo. Ct. App. 2007), <u>quoting</u> <u>Cornejo v. Crawford County</u>, 153 S.W.3d 898, 902 (Mo. Ct. App. 2005). The party seeking damages for breach of contract "bears 'the burden of proving the existence and amount of damages with reasonable certainty.'" <u>Id</u>.

The Mutual Release provides that commissions to Ligas shall be paid "prior to the time each project is completed and is ready for delivery to the customer." The commission payments are to terminate upon certain conditions not relevant here, "and, in any event, after a maximum of twenty-four (24) months from the date of this Release." Because of the defendants' refusal to produce documents that would establish the dates on which commissions to Ligas became payable, it is impossible for the Court to determine the precise date on which the breach occurred. However, it is clear that the breach had occurred by May 17, 2006, the date on which plaintiff filed this action. Accordingly, the Court will consider that date as the date of the breach.

3

### B. Amount of Damages

"Generally, damages need not be established with absolute certainty, but reasonable certainty is required as to both the existence and the amount." Jefferson v. American Fin. Group, Inc., 163 S.W.3d 485, 489 (Mo. Ct. App. 2005) (citations omitted). At the hearing, plaintiff testified that he is owed commissions on the following buildings: (1) five structures named Stoygrad I and II, Gasprom II, MCHS I Nikola, and MCHS II Novogorsk, that were ordered by the Russian government during the period that the Mutual Release was in effect; (2) one structure for which an invoice (Invoice # 787) exists; and (3) sixty-four structures to be provided for the Russian government pursuant to State Contract 37. Plaintiff states that the amount of commissions he is due on the sale of the above structures is $895,000.

Plaintiff calculated his expected commission based on his knowledge of a standard agreement between defendants and the Russian government in which the price of air-supported structures is set at $214 per square meter, not including change orders and miscellaneous parts orders. Plaintiff testified that this standard price is consistent with his extensive experience in business with defendants during the past five years.

#### 1. Stoygrad I and II, Gasprom II, MCHS I Nikola and MCHS II Novogorsk Structures

Plaintiff testified that Air Structures Worldwide, d/b/a/ Horizon Structures, the company of which plaintiff is vice-president, manufactured the five structures and sold them to

4

defendants, who in turn sold them to the Russian government. Plaintiff determined, based on his experience, that defendants had been paid "in excess of $3.75 million" for the five structures, and that he is therefore entitled to a commission of $75,000 for the structures. The Court finds that plaintiff is entitled to a $75,000 commission on the sales of the Stoygrad I and II, Gasprom II, MCHS I Nikola, and MCHS II Novogorsk structures.

### 2. Invoice #787 Structure

Defendants produced the Invoice #787 in response to a subpoena issued by a New York court in an unrelated proceeding. Plaintiff testified that the structure referenced in Invoice #787 is not subject to State Contract 37. The Court finds that the invoice represents a structure subject to the Mutual Release and for which plaintiff is entitled to receive a commission.

Plaintiff testified that, based on his experience, the air-supported structure that is the subject of the Invoice #787 would typically be a structure costing $1 million. A two percent commission would be $20,000. The Court finds that plaintiff is entitled to recover $20,000 for the air-supported structure referred to in the invoice.

### 3. State Contract 37

State Contract 37 is dated April 12, 2006, during the period covered by the Mutual Release. Under the contract, defendant OOO ASATI was to deliver and install 52 air-supported structures for the Russian government's Federal Agency on Physical Culture and Sport. Originally, the structures consisted of 15 ice rinks, each

measuring 2457 square meters and priced at 16,852,752 rubles each, and 37 sports complexes, each measuring 2597 square meters and priced at 17,782,416 rubles each. However, the number of structures was later changed to 31 ice rinks and 33 sports complexes. Thus, the contract price was 522,435,312 rubles for the ice rinks and 586,819,728 rubles for the sports complexes.

"When a court makes an award in U.S. currency, 'the conversion from foreign currency to dollars is to be made at such rate as to make the creditor whole and to avoid rewarding a debtor who has delayed in carrying out the obligation.'" Reliastar Life Ins. Co. v. IOA Re, Inc., 303 F.3d 874, 883 (8th Cir. 2002), quoting Restatement (Third) of Foreign Relations Law § 823 (1987). "'If . . . at the time of breach the plaintiff has a cause of action arising in this country under American law, the breach day rule applies.'" Id., quoting In re Good Hope Chem. Corp., 747 F.2d 806, 811 (1st Cir. 1984). Thus, plaintiff is entitled to recover the loss of what he would have had if the contract (here, the agreement) had been performed, and his claim is for the amount of that loss valued in money at that time. See Hicks v. Guinness, 269 U.S. 71, 80 (1925).

On May 17, 2006, the date of the breach, the rubles-to-dollars exchange rate was 1 ruble to .0371065775 U.S. dollars. See http://www.xe.com/ict (last accessed October 3, 2007). Thus, the total contract amount in U.S. dollars for the sale of 64 air-supported structures (31 ice rinks at 16,852,752 rubles each and 33 sports complexes at 17,782,416 rubles each) is $41,160,658.11. The

plaintiff is entitled to recover a commission of two percent of that figure, or $823,213.16.

Accordingly, the Court finds that plaintiff is entitled to recover $918,213.16 as damages for defendants' breach of the Mutual Release and Payment agreement.

### C. Prejudgment Interest

Missouri law provides that a creditor shall be allowed "interest at the rate of nine percent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts." Mo. Rev. Stat. § 408.020 (2001). "In actions for breach of contract, interest ordinarily runs from date of breach or time when payment was due under contract." Wulfing v. Kansas City Southern Indus., Inc., 842 S.W.2d 133, 160 (Mo. Ct. App. 1992) (citation omitted), overruled on other grounds by Executive Bd. of the Missouri Baptist Convention v. Carnahan, 170 S.W.3d 437 (Mo. Ct. App. 2005). "Where [the] Missouri statute governing prejudgment interest applies, [an] award is mandatory, not discretionary with court." Commercial Union Assur. Co. of Australia, Ltd., Melbourne v. Hartford Fire Ins. Co., 86 F.Supp.2d 921 (E.D. Mo. 2000).

The Mutual Release and Payment agreement does not provide an interest rate. The interest accrued on the amount of $918,213.16 from the date of the breach, May 17, 2006, to the date of this judgment, October 4, 2007, at a rate of 9 percent per annum, is $114,124.71.

Accordingly,

**IT IS HEREBY ORDERED** that the plaintiff is entitled to recover of the defendants damages in the sum of $1,032,337.87. A separate judgment will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 4th day of October, 2007.